```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF VERMONT

UNITED STATES OF AMERICA        :
                                :
     v.                         :    File No. 1:04-CR-149-01, -02
                                :
WILDER HERNANDEZ-JARAMILLO      :
and BLADIMIR ORTIZ-CASTRO,      :
            Defendants          :
_____ :
```

RULING ON MOTIONS TO SUPPRESS
(Papers 18 and 19)

The defendants are charged with one count of conspiring to smuggle and transport aliens and one count of attempting to transport aliens.  They have moved to suppress all statements and evidence gathered as a result of an allegedly illegal seizure on October 4, 2004.  On April 23, 2005, the Court held a hearing on the defendants' motions.  Upon review of the record and the testimony presented at the hearing, and for the reasons set forth below, the Motions to Suppress are DENIED.

I. Background

Between August and October 2004, approximately 15 groups of illegal aliens entered the United States from Canada using a rural path through Derby Line, Vermont.  The U.S. Border Patrol intercepted seven groups.  It inferred the remaining groups had crossed the border based upon sensor activity and signs of foot

traffic on the path.  Those illegal aliens who were intercepted were generally from Pakistan, India and South America.

On October 3, 2004, the Border Patrol stationed three agents to observe the path.  At 12:30 a.m. on October 4, 2004, agents intercepted nine individuals, but two individuals, assumed to be guides, evaded apprehension.

The three agents transported the nine aliens to the border station and asked the Vermont State Police to look for a pick-up vehicle on Interstate 91 near Exit 29, a location the Border Patrol previously had identified as a place where aliens using the Derby Line path would reunite with their guides.  At about 1:30 a.m., Vermont State Police Sergeant Charboneau noticed a Dodge passenger van with Connecticut plates parked near Exit 29.

In the van, which was equipped with three bench seats, were the defendants, Wilder Hernandez-Jamarillo and Bladamir Alexander Ortiz-Castro.  The van's driver, Hernandez-Jamarillo, had a cell phone in his hand.  Both men were speaking Spanish with very limited English.  Sergeant Charboneau does not speak Spanish.

Sergeant Charboneau reported by radio to his dispatch that he had found the van.  In response, Senior Border Patrol Agent Matthew Progen arrived at the scene approximately 10 minutes later. Agent Progen, who speaks Spanish, spoke with the two men, whose answers indicated they were in the United States illegally. In fact, Hernandez-Jamarillo is from Colombia, and Ortiz-Castro

is from Guatemala.  When Agent Progen asked why they were parked near Exit 29 in the middle of the night, they became evasive and tendered no credible response.  Hernandez-Jamarillo first indicated that he was on his way home to Connecticut.  When Agent Progen noted he was parked in the northbound lane of I-91, he said he was going to Canada.  Ortiz-Castro stated he was "taking a ride" with his friend.  Based on the totality of the circumstances, Agent Progen arrested both men.

On October 5, Senior Border Patrol Agent Robert Dandrow executed an affidavit for a criminal complaint charging the defendants with conspiring to smuggle aliens into the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).  Magistrate Judge Niedermeier signed the complaint and appointed counsel.  On October 20, 2004, Magistrate Judge Neidermeier conducted a preliminary hearing and found probable cause that the defendants had engaged in the conduct alleged in the criminal complaint.  On November 4, 2004, a grand jury returned a two-count Indictment charging the defendants with conspiring to smuggle aliens and transport aliens, and attempting to transport aliens.

## II. Discussion

According to the defendants, "the officers had no articulable specific suspicions regarding Mr. Hernandez-Jaramillo and Mr. Ortiz-Castro.  Although the vehicle was pulled alongside

the highway, it was not a vehicle identified by the individuals who illegally entered the United States nor was there anything 'suspicious' about the vehicle." Motion to Suppress (Paper 19) at 4. They argue, therefore, that the stop, detention and subsequent search of their vehicle were not supported by reasonable suspicion and therefore violated their Fourth Amendment rights.

"Under the Fourth Amendment . . . a policeman who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion." Berkemer v. McCarty, 468 U.S. 420, 439 (1984)(citations and quotations omitted). "Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." Id. Because they are noncoercive, ordinary traffic stops do not constitute being "in custody" for Miranda purposes. Id.

Applying this standard, it is clear that the defendants' objections are not supported by the record. The defendants were parked on the side of the highway, in the middle of the night, in a remote area known for alien smuggling, at a time when border agents had just apprehended nine intruders and had observed their

two guides fleeing.  The van was capable of transporting a substantial number of passengers.  Accordingly, Officer Charboneau and Agent Progen acted reasonably when they approached the defendants and asked them questions to ascertain their identity and purpose for being parked about two miles south of the Canadian border.  See United States v. Hing, 867 F.2d 754, 756 (2d Cir. 1989)(statements made at roadside stop admissible without Miranda warnings); United States v. Adegbite, 846 F.2d 834, 838 (2d Cir. 1988)("the solicitation of information concerning a person's identity and background does not amount to custodial interrogation").

Only after failing to allay the reasonable suspicions of the two officers, were the defendants formally arrested and provided Miranda warnings.  Thereafter, their vehicle was searched incident to their arrest.  See Whren v. United States, 517 U.S. 806, 811 (1996).  Under these circumstances, the Court finds the defendants' Fourth Amendment rights were not violated.

Lastly, the defendants argue their motions to suppress should be granted because of alleged violations of the Vienna Convention.  See Supplemental Brief (Paper 24).  The Second Circuit has suggested the Vienna Convention does not create rights which are enforceable by individuals and therefore does not provide a basis for suppressing statements.  See United States v. De la Pava, 268 F.3d 157, 164-65 (2d Cir. 2001).

The Motions to Suppress are DENIED.  This case shall be placed on the June 1, 2005 trial calendar.

SO ORDERED.

Dated at Brattleboro, Vermont, this 23rd day of May, 2005.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge
